**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190140-U

Order filed January 26, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Whiteside County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| | ) | Appeal No. 3-19-0140 |
| v. | ) | Circuit No. 85-CF-573 |
| | ) | |
| JAMES D. HELLE, | ) ) | Honorable Stanley B. Steines, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE DAUGHERITY delivered the judgment of the court.
Justices Lytton and Schmidt concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*:   The circuit court erred in determining that it was legally obligated to accept the uncontradicted testimony of an expert witness.

¶ 2      Defendant, James D. Helle, appeals following the denial of his petition for recovery under the Sexually Dangerous Persons Act (Act) (725 ILCS 205/9 (West 2018)). He argues that the Whiteside County circuit court committed reversible error where, in denying defendant's petition, it concluded that it had no discretion to reject the expert opinion of the testifying doctor

because it was uncontradicted. We vacate the judgment of the circuit court and remand for the entry of a new judgment.

¶ 3                                                    I. BACKGROUND

¶ 4        Defendant was adjudicated a sexually dangerous person (SDP) in 1986. In 1998, he was conditionally released from the custody of the Department of Corrections (DOC). On May 31, 2018, defendant filed an application for recovery, in which he sought a full discharge. Defendant waived his right to proceed via jury trial. The circuit court commenced a hearing on the matter on February 8, 2019.

¶ 5        The sole witness at the recovery hearing was Dr. Deborah Nicolai, an expert in the fields of clinical psychology and sex offender evaluation and treatment. Nicolai conducted an interview of defendant on June 25, 2018, and filed a written report of her evaluation, which was entered into evidence. Nicolai testified that defendant had been in continuous treatment since his 1998 conditional release. Defendant was born in 1948.

¶ 6        Nicolai utilized actuarial tools to aid in determining defendant's future sexual offense risk. Defendant scored a 2 on the Static-99R, based on the information available to Nicolai, indicative of an "average risk" for sexual offense recidivism. Nicolai believed that that score underestimated defendant's actual risk, because it did not contemplate information related to numerous uncharged offenses. Defendant scored a 15 out of 26 on the Stable-2007 instrument, indicating a "high level of dynamic risk factors." Nicolai did not consider defendant's age to be a "protective factor." She noted that his age of 50 at the time of his release from DOC was already built into his Static-99R score, and that age was only a protective factor when it rendered a person physically unable to commit further sexual offenses.

2

¶ 7     Nicolai diagnosed defendant with pedophilic disorder. She explained that pedophilic disorder is defined as "recurrent intense sexual urges, fantasies[,] or behaviors involving sexual activity with prepubescent children generally under the age of 13" occurring over a period of six months. Nicolai cited defendant's "long history of sexual behaviors" involving children in the prescribed age range as a basis for her diagnosis.

¶ 8     Nicolai testified that defendant had demonstrated propensities toward acts of sexual assault or sexual molestation of children. She based that conclusion on her risk assessment, which indicated defendant was substantially probable to reoffend. When asked again whether defendant had demonstrated those propensities, Nicolai responded that she did not understand the question. The State asked if defendant had described multiple occasions on which defendant had molested children, and Nicolai responded affirmatively. It was Nicolai's opinion, to a reasonable degree of psychological certainty, that defendant should remain under supervision.

¶ 9     On cross-examination, Nicolai agreed that defendant's treatment provider had recommended that defendant be discharged. She affirmed that defendant had no parole violations or known instances of reoffending since his 1998 release from DOC custody. Nicolai also testified at length regarding defendant's age as a protective factor and its role in the Static-99R. She explained that a person who is between 40 and 59.9 years of age at the time of their release from custody receives a one-point deduction in their score on that instrument. A person over 60 years of age at that time would receive a three-point deduction. Even though defendant was 70 years old at the time of his evaluation, he received only the one-point deduction, because he was 49 years old when he was released from DOC custody.

¶ 10    Nicolai testified regarding three criteria for a diagnosis of pedophilic disorder—including at least six months of recurrent sexual fantasies, urges, or behaviors involving prepubescent

3

children. She agreed that there was no evidence that defendant met any of the three criteria at any time since his 1998 release. However, she testified that pedophilic disorder "[i]t's a lifelong condition," such that defendant could never be rid of it. She agreed that "no matter how much treatment he receives, there is absolutely no way to ameliorate that disorder."

¶ 11    The circuit court ultimately denied defendant's petition. In so ruling, the court stated:

"It is important to note that we only had the opinion of *** one expert witness in this case and even if I were to use my common[ ]sense and somehow disagree with that expert opinion or disregard that expert opinion, I am told differently by the appellate court."

The court then described and quoted from *People v. Nelson*, 2013 IL App (3d) 120191, ¶ 29. The court indicated that *Nelson* stood for the proposition that " 'the trier of fact cannot disregard uncontroverted expert testimony when this testimony pertains to medical issues beyond the understanding of a layperson.' " Noting that Nicolai's testimony fit that description, the court added: "Although my common[ ]sense may disagree with some aspects of her reasoning, it is still uncontroverted expert testimony."

¶ 12    Defense counsel took exception to the court's reasoning. In seeking clarification, counsel asked: "So is the Court saying that unless there is another expert to testify to the contrary *** that the Court is bound to follow that expert's conclusion ***?" The court replied: "I do believe I am bound by the uncontroverted expert testimony." Counsel continued to object, pointing out that the Act did not provide for an expert witness for the defense, which, if the court's reasoning was accepted, would render recovery hearings largely meaningless. The court reiterated that while its common sense would cast doubt on some aspects of Nicolai's testimony, it was nevertheless accepting her expert conclusions.

4

¶ 13                                II. ANALYSIS

¶ 14        On appeal, defendant contends that the circuit court's conclusion that it was bound by law to accept Nicolai's expert opinions on the grounds that they were "uncontroverted" was erroneous. Accordingly, defendant requests that we vacate the court's judgment denying his petition for recovery and remand the matter so that the court may enter a new judgment without that misapprehension of law.

¶ 15                                A. Forfeiture

¶ 16        The State's primary argument on appeal is that defendant has forfeited the issue in question. Specifically, it contends that defendant's failure to include the alleged error in a posttrial motion precludes review by this court.

¶ 17        In the criminal context, it is well-settled that a defendant must (1) raise a contemporaneous objection, and (2) include the alleged error in a posttrial motion in order to preserve an issue for appeal. *E.g.*, *People v. Denson*, 2014 IL 116231, ¶ 18. Proceedings under the Act, however, are civil in nature, rather than criminal. 725 ILCS 205/3.01 (West 2018); *People v. Lawton*, 212 Ill. 2d 285, 295 (2004). "In civil cases, a posttrial motion is not required." *People v. Holmes*, 2016 IL App (1st) 132357, ¶ 45. A civil defendant need only make a contemporaneous objection at trial in order to preserve an issue for appeal. *In re Marriage of Harper*, 191 Ill. App. 3d 245, 247 (1989).

¶ 18        The record in the instant case makes clear that defense counsel raised the issue in question in the circuit court. In fact, counsel disputed at length the court's legal determination that it was bound to accept Nicolai's opinion immediately upon the court's issuance of its judgment. Because the proceeding was civil in nature, this contemporaneous objection was

sufficient to preserve the issue for appellate review. See *id*. Accordingly, we find that the issue has not been forfeited.

¶ 19                                B. Discretion to Accept or Reject Expert Opinion

¶ 20        Defendant maintains that a trier of fact has the discretion to reject the opinion of an expert witness, even where that testimony is uncontroverted or uncontradicted. He argues that the circuit court's opinion to the contrary was a legal misapprehension requiring vacatur and remand.

¶ 21        The State concedes that "the trial court misread the holding in *Nelson*." Indeed, it is well-settled that the trier of fact is free to reject the expert testimony, even where it is uncontroverted or uncontradicted. *In re Glenville*, 139 Ill. 2d 242, 251 (1990) ("Even if several competent experts concur in their opinion and no opposing expert testimony is offered, it is still within the province of the trier of fact to weigh the credibility of the expert evidence and to decide the issue. [Citation.] *** An opinion of an expert is to be accorded such weight that, in light of all of the facts and circumstances of the case, reasonably attaches to it."); *People v. Bilyew*, 73 Ill. 2d 294, 302 (1978) ("The credibility and weight to be given psychiatric testimony are for the trier of fact."). Our supreme court has observed that an expert witness is allowed to testify to the ultimate question in a case, without usurping the province of the factfinder, precisely because the factfinder is not obligated to accept that opinion. *Merchants National Bank of Aurora v. Elgin, Joliet & Eastern Ry. Co.*, 49 Ill. 2d 118, 122 (1971). We therefore accept the State's concession and find that the circuit court erred in determining that it was bound to accept Nicolai's testimony.

¶ 22        While the above case law is dispositive of the issue, we are compelled to address this court's decision in *Nelson*, given the circuit court's express reliance on that opinion. Notably, the

6

circuit court in *Nelson* indicated that it was bound to credit the testimony of a defense expert because it was not contradicted by an expert for the State. *Nelson*, 2013 IL App (3d) 120191, ¶ 18. In *dicta*, this court referred to that judgment as "proper."[1] *Id.* ¶ 29. In doing so, this court cited to *Morus v. Kapusta*, 339 Ill. App. 3d 483, 492 (2003), with the following parenthetical: "holding that the trier of fact cannot disregard uncontroverted expert testimony when this testimony pertains to medical issues 'beyond the understanding of a layperson.' " *Nelson*, 2013 IL App (3d) 120191, ¶ 29.

¶ 23        The full excerpt from *Morus*, however, reads: "[W]hile *a jury is free to disregard an expert's opinion or conclusion of fact on the basis of credibility considerations*, it cannot disregard expert testimony when this testimony pertains to medical issues 'beyond the understanding of a layperson.' " (Emphasis added.) *Morus*, 339 Ill. App. 3d at 492 (quoting *Piano v. Davison*, 157 Ill. App. 3d 649, 675 (1987)). Thus, even *Morus* allows that the trier of fact must retain some discretion. While independent medical diagnosis or analysis is beyond the purview of a layperson, determinations of the expert's credibility, the reliability of the underlying facts, or the soundness of the logical steps from facts to conclusions are well within the layperson's understanding. See *Piano*, 157 Ill. App. 3d at 675. Notably, the *Nelson* court had no occasion to discuss these principles in detail, as the State in that case had made no effort to impeach, undermine, or otherwise call into question the expert opinion. *Nelson*, 2013 IL App (3d) 120191, ¶ 29; see *Glenville*, 139 Ill. 2d at 251 ("[T]he uncontradicted and unimpeached opinion of an expert cannot be rejected *arbitrarily*." (Emphasis added)). Of course, the same

_____

[1]The *Nelson* court reversed the defendant's conviction on separate grounds. *Id.* ¶¶ 31-32.

cannot be said in the instant case, where defense counsel's cross-examination sought to undermine Nicolai's conclusions on a number of grounds.

¶ 24 The State's only remaining argument is that the State below proved by clear and convincing evidence that defendant remained an SDP. See 725 ILCS 205/9(b) (West 2018) (mandating that, upon application for recovery, the State must demonstrate by clear and convincing evidence that the applicant remains an SDP). Of course, in summarizing the evidence, the State relies largely on the testimony from Nicolai. Defendant has made no argument that, when Nicolai's testimony is credited, the State failed to meet its burden. It is well-settled that in reviewing an SDP hearing, this court must largely defer to the circuit court's credibility determinations and factual findings. *E.g.*, *People v. Houde*, 2019 IL App (3d) 180309, ¶ 26. The circuit court has not yet made a proper determination as to whether Nicolai's expert testimony should be accepted, and it would be inappropriate for a court of review to conduct its own independent analysis of that issue.

¶ 25 Finally, the State makes no argument that the circuit court's error was harmless. Such an argument—that the circuit court would have accepted Nicolai's testimony even if it was not under the legal misapprehension discussed here—would be particularly meritless given the record before us. The circuit court stated explicitly that it was bound by Nicolai's testimony. It also made numerous references to its own common sense, repeatedly stating that common sense "may disagree" with parts of Nicolai's reasoning. Accordingly, there is no way for this court to discern with confidence whether the circuit court would have accepted or rejected Nicolai's opinions, had it known it had the discretion to do either. We therefore find reversible error and vacate the circuit court's judgment.

¶ 26                                    C. Remedy

¶ 27    Defendant on appeal requests that this court either remand the matter for a new hearing on his recovery application, or, more simply, remand for the circuit court to enter a new judgment, disabused of its misapprehension of the law. He makes no argument in favor of one of these remedies over the other.

¶ 28    As no error has been found in the underlying proceedings themselves, we see no purpose in vacating those proceedings and ordering what would be an identical hearing to that previously held. We therefore vacate only the judgment of the circuit court and remand the matter so that the court may enter a new ruling on defendant's application, with discretion to accept or reject, in whole or in part, the testimony of the expert witness.

¶ 29                           III. CONCLUSION

¶ 30    The judgment of the circuit court of Whiteside County is vacated, and the matter is remanded.

¶ 31    Vacated and remanded.